Gants, J.
After hearing, as provided in Mass.R.Civ.P. 58(a)(2), this Court hereby approves the form of judgment issued today. In determining the form of judgment, this Court had to decide three questions, which the Court will address in turn.
1. Does the jury’s finding that Testing Holdings USA, Inc. (“Testing Holdings") breached the “cumulative earn-out provision” of its Employment Agreement with the defendant Glen Dash, as a matter of law, preclude the jury’s finding that Dash breached his Restrictive Covenant with Testing Holdings?
The jury, in answer to Question 27 of the verdict form, found that Testing Holdings breached the “cumulative earn-out provision” of its Employment Agree *531 ment with Glen Dash. Mr. Dash, at trial, attempted to argue that such a finding on his counterclaim would bar a jury finding that he was in breach of his Restrictive Covenant with Testing Holdings, since the breach of the “cumulative earn-out provision” occurred prior to his alleged breach of the Restrictive Covenant. This Court barred Dash from making this argument to the jury, believing it to be a matter of law, and reserved it in the event that the jury found both breaches. Now that the jury has indeed found both breaches, he argues that, as a matter of law, Testing Holdings’ breach of his Employment Agreement bars any finding of breach of his Restrictive Covenant. This Court finds that both breaches of contract found by the jury may stand; the jury’s finding of a breach as to the counterclaim does not preclude a finding of breach as to the complaint.
“It is well established that a material breach by one party excuses the other party from further performance under the contract.” Ward v. American Mutual Liability Insurance Co., 15 Mass.App.Ct. 98, 100 (1983). It is also plain that a material breach of an employment agreement by an employer may discharge an employee from further obligation under a non-compete provision of that agreement. Id. at 101. Therefore, when an employer has committed a material breach of an employment agreement with an employee, this Court has held that the employment agreement, with its non-compete provision, no longer remains in effect, and the employee, if he continues to work for the employer, becomes an at-will employee without a governing employment agreement. Lantor Inc. v. Ellis, C.A. No. 98-1064, 9 Mass. L. Rptr. 221, 1998 WL 726502 (Mass. Super. Ct. Oct. 2, 1998) (Gants, J.). In this case, however, the Restrictive Covenant that Dash breached was not contained within the Employment Agreement that Testing Holdings breached; it was contained in a separate agreement — the Restrictive Covenant— which Testing Holdings obtained in return for separate consideration identified in paragraph 7 of the Restrictive Covenant as $1,250,000. Therefore, even if, as a result of Testing Holdings’ breach, the Employment Agreement no longer remained in effect and Dash continued as an at-will employee, his obligations under the Restrictive Covenant remained intact.[1] This Court will not excuse Dash from his obligations under the Restrictive Covenant simply because Testing Holdings has breached a separate contract between them. See R.A. Lord, 13 Williston on Contracts, §39.2, at p. 512 (“A party to a contract is not excused for nonperformance due to the fact that the other party to the contract has breached a separate contract between them, nor due to the fact that nonperformance under a prior contract or contracts between the parties has been excused”). Nor would equity, under the circumstances of this case, permit such a result.
2. Is the damage award of $350,000 against the defendant Jon Curtis for breach of contract cumulative or noncumulative with the damage award of $520,000 against the defendant Glen Dash?
A judgment issued after a jury trial should fairly reflect the jury’s verdict. Where the verdict form is clear, this Court need not determine the intent of the jury, because that intent is clearly reflected in the jury’s verdict. Where, however, there is ambiguity as to the meaning of the jury’s verdict, then this Court needs to ascertain the jury’s intent with regard to the verdict it issued in determining the appropriate form of judgment.
Here, there is ambiguity as to what the jury intended when it found, in answer to Questions 18 and 22, that Curtis’s breach of contract caused Intertek Testing Services NA, Inc. (“Intertek”) to lose $350,000 in net profits and Dash’s breach of contract caused Intertek to lose $520,000 in net profits. Intertek contends that the jury intended these awards to be consecutive, not cumulative, so that it receives a total of $870,000 for the two breaches of contract. Curtis and Dash contend that the jury intended these awards to be concurrent and non-cumulative, so that Intertek would receive a total of $520,000 for the two breaches of contract.[2]
In ascertaining the jury’s intent with respect to its verdict, this Court must look to the totality of the verdict, the Court’s instructions to the jury, and the evidence at trial. The verdict itself sheds little light on the subject. In answer to Question 16, the jury, after “[clonsidering together all the breaches of contract that [it] found to be committed by any defendant," found “the amount of net profits in 1996 dollars that Intertek lost as a result of any and all of these breaches of contract” to be $2,870,000. It found, however, that only two defendants — Curtis and Dash — committed breaches of contract that caused loss, and the damage awards against them, even including the awards against Dash for legal malpractice and breach of his fiduciary duty as an officer, if added together, total $2,450,000, which is $420,000 less that the amount set forth in answer to Question 16.[3] If the jury intended that the Curtis damage award be concurrent with the Dash damage award for breach of contract, then the loss of total net profits constituting the jury’s award would equal $2,100,000, which is $770,000 less than the amount set forth in Question 16. In short, it is plain that the jury intended that the sum of the damage awards against Curtis and Dash be less than the amount in Question 16; it is not the case that the sum is equal if the damage awards are treated cumulatively and less only if treated concurrently.
This Court’s instructions to the jury did not specifically address the subject of cumulative vs. concurrent damage awards, but did touch upon issues relevant to evaluate what the jury intended by its verdict. The *532 Court told the jury that each defendant must be considered separately, and is responsible for damages only if his breach of contract was a substantial contributing factor in causing those damages. The Court also instructed the jury that, if it awards damages against more than one defendant, each defendant is liable to pay this amount, but the total amount awarded may not exceed the amount stated in answer to Question 16. At the request of the parties, the Court later sought to clarity this point by explaining what it means for an award to be joint and several. The Court gave, as an example, a verdict in which the jury answered $100 to Question 16, and found that each of the three defendants caused a loss of net profits of $100 each. The Court explained that the consequence of such a verdict would not be an award of $300 to Intertek, but rather an award of $100, joint and-several as to all defendants. The Court did not provide an example where the awards were cumulative, because it did not anticipate, in view of the evidence, that the jury would find the awards to be cumulative.[4]
The most compelling argument favoring the conclusion that the jury intended these damage awards to be concurrent and not cumulative is the evidence presented at trial.[5] Intertek’s damage expert, Robert Lind, provided the jury with a damage calculation in which the lost profits caused by Curtis and Dash were concurrent, not cumulative, as did the defendants’ damage expert, Martha Samuelson. Therefore, to infer that the jury intended the damage awards for breach of contract against Curtis and Dash to be cumulative would be to infer that the jury disregarded a fundamental premise of both experts, and concluded that Curtis caused a loss of net profits that Dash did not cause, and vice-versa. While it is certainly theoretically possible that the jury reached a conclusion as to the cumulative nature of these lost profits that differed from both experts, it is not clear here on what evidence the jury would have rested such a finding.
Therefore, in view of the evidence the jury heard as to damages and this Court’s instructions to the jury regarding damages, this Court finds it more likely than not that the jury intended the breach of contract damage awards against Curtis and Dash to be concurrent and non-cumulative.
3. Does the Clerk of Court compute interest on the legal malpractice and breach of fiduciary duty awards from the date the complaint was first filed (September 29, 1988) or the subsequent date that Dash was added as a defendant?
Interest is computed from the date the complaint was initially filed, not the date it was amended to add Mr. Dash as a defendant. Bernier v. Boston Edison Company, 380 Mass. 372, 388-89 (1980) ("The fact that a defendant against whom recovery is had was added late in the lawsuit, should not affect the matter; the plaintiffs entitlement to interest . . . also dates from the commencement of the action”).

 Indeed, the Employment Agreement only had a duration of three years, while the Restrictive Covenant was for seven years. Therefore, it was plain to all parties that the Restrictive Covenant would remain in effect long after the Employment Agreement had expired.

 In retrospect, this Court regrets that it excused the jury without recognizing and addressing this ambiguity. This Court, after the jury returned its verdict, did recognize the verdict’s ambiguity as to whether the contract and tort awards against Dash were cumulative or concurrent, and sent Supplemental Special Questions to the jury, which made it clear that the jury intended the awards to be consecutive. Neither this Court, nor any counsel, were clever enough to recognize that additional Supplemental Special Questions should have been asked of the jury to resolve the ambiguity that the Court needs to resolve through this decision.

 The jury was told that their total damage award could not exceed the amount set forth in Question 16, but could be less than that amount.

 Indeed, the Court’s purpose in having the jury first determine the total amount of damages from all breaches of contract was to ensure that the damage awards against individuals would not be added together and exceed the total amount of net profits lost, thereby providing the plaintiffs with an undeserved windfall.

 I emphasize, as I did at the hearing, that I am considering the evidence at trial, not for the purpose of evaluating the sufficiency of the evidence, but simply to assist the Court in finding the intent of the jury with respect to the verdict, because it is appropriate to infer that the jury’s verdict fairly reflected the evidence presented to them. The question of the sufficiency of the evidence is left for the motion for judgment notwithstanding the verdict.